Aaron B. Zisser [S.B. # 302926]
ZISSER LAW OFFICE
5706 Cahalan Ave., #23730
San Jose, CA 95153
Telephone: (669) 228-5154
Fax: (408) 404-8980
Email: aaron@zisserlawoffice.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO; BRANDON ERICKSON, in his individual capacity; ANDRES MONDRAGON, in his individual capacity; THEODORE POLOVINA, in his individual capacity; and DOES 1-25, in their individual capacities, <br><br> Defendants. | Case No.: 25-cv-2976 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **U.S. CONSTITUTION** <br> 2. **CIVIL CONSPIRACY** <br> 3. **SUPERVISORY LIABILITY** <br> 4. **MONELL LIABILITY** <br> 5. **AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT** <br> 6. **UNRUH CIVIL RIGHTS ACT** <br> 7. **FALSE ARREST / FALSE IMPRISONMENT** <br> 8. **BANE ACT** <br> 9. **NEGLIGENT SUPERVISION** <br> 10. **NEGLIGENCE** <br> 11. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br> **JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

1.    This is an action for declaratory relief and damages against the City and County

of San Francisco ("City") and City officials and supervisors. Defendants willfully violated the

1
Complaint for Damages – Jury Demand

constitutional and statutory rights of JANE DOE ("Plaintiff") when they unlawfully detained her for an involuntary mental health hold at her home and subjected her to unnecessary institutionalization.

2. The decision to place Plaintiff on a mental health hold was predicated on minimal indicators of risk and ignored numerous indicators demonstrating that Plaintiff required community-based interventions rather than institutionalization at a psychiatric hospital.

3. Officers made no attempt to enlist on-site interventions and services and spoke with Plaintiff for just two minutes before deciding to detain her for an involuntary mental health hold ("5150 hold" or "5150 mental health hold") pursuant to California Welfare and Institutions ("WIC") Code § 5150(a).

4. Officers ignored or disregarded the fact that Plaintiff had immediate social supports, i.e., that she lived with her partner; Plaintiff was actively seeking support from mental health clinicians through her medical provider; and, based on information from her partner, her mental health history demonstrated that she was not at risk of harming herself.

5. Officers instead explicitly indicated they were detaining her to avoid being blamed later should Plaintiff harm herself and made false representations in the police report about their own investigation and about Plaintiff's comportment and state of mind during their interaction with her.

6. Officers' decision was also based on unwarranted assumptions and outdated stereotypes about individuals with serious mental health conditions.

//

//

//

2

Complaint for Damages – Jury Demand

## II.    JURISDICTION AND VENUE

7.    This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of California state law.

8.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

9.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in San Francisco, California.

## III.    PARTIES

10.    Plaintiff JANE DOE is a competent adult and sues in her individual capacity.

11.    Defendant CITY AND COUNTY OF SAN FRANCISCO ("CITY") is and at all times herein mentioned a municipal entity duly organized and existing under the laws of the State of California that manages and operates the SAN FRANCISCO POLICE DEPARTMENT ("SFPD").

12.    Defendant BRANDON ERICKSON at all material times was employed as a law enforcement officer by Defendant CITY and was acting within the course and scope of that employment. He is sued in his individual capacity.

13.    Defendant ANDRES MONDRAGON at all material times was employed as a law enforcement officer by Defendant CITY and was acting within the course and scope of that employment. He is sued in his individual capacity.

3
Complaint for Damages – Jury Demand

14. Defendant THEODORE POLOVINA at all material times was employed as a law enforcement officer by Defendant CITY and was acting within the course and scope of that employment. He is sued in his individual capacity.

15. Defendants DOES 1-25 are additional employees of the City, including but not limited to officers, supervisors, administrators, and other employees who were responsible for the development, promulgation, and/or implementation of City policies, procedures; supervision; management; and training. Plaintiff alleges that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein. DOES 1-25 are sued in their individual capacities.

16. At all relevant times, Defendants, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual employees of the City, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the City and its employees and agents complied with the laws and constitutions of the United States and the State of California.

17. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants worked in San Francisco, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants were employees, agents, and/or servants of the City and acted within the course and scope of said employment, agency and/or service, and acted under color of state law.

18. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 25, inclusive, and therefore sues these defendants by such fictitious names, in their individual capacities. Plaintiff is informed, believes, and alleges that each of the fictitiously

named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

19.     The reason why Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does, inclusive, is that same have been unascertainable as of the date of filing of this complaint and many of their records may be protected by state statute and can only reasonably be ascertained through the discovery process. The individual defendants were at all times mentioned herein duly appointed, qualified, and acting as officers of the City, acting within the course and scope of such employment with the City, and acted under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California.

20.     At all times relevant herein, Defendants engaged in the acts or omissions alleged herein under color of state law.

### IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

21.     Pursuant to Government Code § 910, Plaintiff presented a timely appropriate claim for damages on or around August 20, 2024, less than six months after the incident. The City and County of San Francisco responded to the government tort claim on October 2, 2024, at which point the claim was denied. This action is timely.

//

//

//

//

5
Complaint for Damages – Jury Demand

## V.    FACTS

**A. Defendant Erickson's initial response and investigation was rushed and woefully insufficient**

22.    On March 1, 2024, Defendants Erickson and Mondragon responded to a call regarding concerns about Plaintiff's mental health status that had been reported by Plaintiff's community college instructor.

23.    The officers responded to Plaintiff's home in San Francisco, CA, which she shared with her significant other and romantic partner, who was present at the time the officers arrived.

24.    Plaintiff's partner answered the door when officers arrived.

25.    As Plaintiff approached the doorway, the first thing she said to the officers was, "Hi, I'm [Jane]. I'm okay." She smiled as she spoke.

26.    Defendant Erickson then asked Plaintiff how she was, to which Plaintiff once again stated, "I'm okay."

27.    Defendant Erickson falsely stated in his report that "[u]pon arrival" at the home, "I spoke with [Plaintiff]. [Plaintiff] was crying and she appeared un-easy." In fact, during the entire time that Plaintiff initially spoke with Defendant Erickson, she was not crying, was composed, and was able to answer his questions. It was not until later, once she was notified that she was being placed on an involuntary mental health hold, that she began crying.

28.    Defendant Erickson then spoke with Plaintiff for less than two minutes.

29.    She told him, "I'm doing currently okay right now."

30.    When he asked Plaintiff if she feels like hurting herself, she responded, "Not right now."

6
Complaint for Damages – Jury Demand

31.    When Defendant Erickson asked Plaintiff when the last time was that she thought of hurting herself, she told him, "A couple days ago," and said, "But I'm okay."

32.    Plaintiff further informed Defendant Erickson, "I've been talking to Kaiser" about medication. She told him that she had spoken to Kaiser the day before and that Kaiser was going to contact her that day.

33.    Plaintiff told Defendant Erickson that she was awaiting a call back from her mental health clinician, which, upon information and belief, Defendant Erickson understood, as a result of his training, to be a "protective" factor counseling against imposing an involuntary mental health hold.

34.    Defendant Erickson did not ask Plaintiff about her mental health history.

35.    Defendant Erickson did not inquire with Plaintiff about the possibility of voluntary treatment or voluntary commitment, despite, upon information and belief, receiving training that discusses such tactics and considerations, and despite the fact that one of the San Francisco Fire Department ("SFFD") emergency medical technicians on scene specifically asked Defendant Erickson if he had done so.

36.    Defendant Erickson did not inquire with Plaintiff or her partner, and did not address in his report, whether Plaintiff had a plan, means (e.g., access to a weapon), or opportunity (e.g., whether she would be left at home alone), despite, upon information and belief, receiving training as to such considerations.

37.    Defendant Erickson did not ask Plaintiff's partner any questions, nor did he ask Defendant Mondragon about Defendant Mondragon's conversation with Plaintiff's partner.

38.    Defendant Erickson did not include in his report discussion of, or inquire about, any safety plan or the possibility of following up later in the day once Plaintiff spoke with her

Complaint for Damages – Jury Demand

mental health clinicians, despite, upon information and belief, receiving training that addressed such tactics and considerations.

39. Defendant Erickson told the emergency medical personnel with the SFFD, who had also arrived at Plaintiff's home, that Plaintiff told him that she was "feeling suicidal" two days earlier. However, she did not in fact tell him that she was feeling suicidal.

40. Defendant Erickson did not enlist or attempt to enlist the mobile civilian response teams, despite, upon information and belief, the availability of such programs, which include evaluation for 5150 holds, assistance connecting consumers to outpatient mental health services, and other services provided by trained mental health clinicians, and despite, upon information and belief, the fact that Defendant Erickson received training that indicated the availability of such programs and encouraged trainees to utilize such programs.

41. Defendant Erickson twice mentioned to the SFFD personnel that Kaiser was supposed to call her, thereby recognizing this was a relevant factor.

42. SFFD personnel at the scene made observations that directly conflicted with Defendant Erickson's purported assessment. For example, SFFD's notes included the following:

    a. Plaintiff was "oriented."

    b. Plaintiff was not showing "agitation."

    c. Plaintiff was not "combative."

    d. Plaintiff was not "confused.

    e. Plaintiff's level of distress was "mild."

    f. Plaintiff's initial and final acuity was "lower."

    g. Nothing was noted for "injury."

    h. Plaintiff had "superficial scratches" on her wrist that were "scabbed over."

Complaint for Damages – Jury Demand

43.     Defendant Erickson did not confer with SFFD personnel regarding their observations of Plaintiff's condition or their assessment of her need for an involuntary mental health hold.

**B.  Defendant Erickson's call to Plaintiff's college instructor**

44.     After he spoke with Plaintiff, Defendant Erickson returned to his vehicle in order to contact Plaintiff's college instructor, who had reported the concerns about Plaintiff's mental health condition.

45.     Before contacting the college instructor, Defendant Erickson made a call to another officer and told the other officer that he wished to connect with the instructor to confirm Plaintiff's account that Plaintiff had texted her instructor the previous day, as opposed to "an hour ago," implying that texting her teacher the previous day would indicate less urgency or acuity than texting her more recently. He said on the call, "Because if it was two days ago, I mean, you know, I don't think we can 5150 based on a statement two days ago."

46.     He further told them that he was checking with the instructor to see if Plaintiff was lying about the timeline, "because . . . she could have said she wanted to kill herself two hours ago." However, there was no information that she said she wanted to kill herself.

47.     Once Defendant Erickson confirmed with the instructor that Plaintiff had in fact texted the teacher that morning, not the previous day as Plaintiff indicated to Defendant Erickson, he asserted that she was lying.

48.     Defendant Erickson did not ask her about the discrepancy or identify the possibility that she was simply misremembering, especially in light of the fact that the instructor had texted Plaintiff the previous day and Plaintiff responded very early in the morning, at approximately 6:30 a.m.

Complaint for Damages – Jury Demand

49. Defendant Erickson did not identify in his police report the discrepancy or the possibility that she was lying, thus implying that this was not a factor in his decision to place Plaintiff on a 5150 mental health hold.

## C. Defendant Erickson ignored Defendant Mondragon's investigation and focused on the risk of liability rather than Plaintiff's actual risk

50. Defendant Mondragon reported to Defendant Erickson about his conversation with Plaintiff's partner. Defendant Mondragon told Defendant Erickson that Plaintiff's partner had reported that Plaintiff had a long history of suicidal ideation from the time she was a child, that this was not out of the norm, that she was taking her medication, that she may feel a little more stress, but that she has never acted on any such ideation.

51. In his application for the 5150 hold, Defendant Erickson explicitly indicated, by checking a box, that Plaintiff's mental health history played no role in his determination regarding the hold, despite the fact that he had received information about the course of her mental health disorder as a result of Defendant Mondragon's conversation with Plaintiff's partner, which he relayed to Defendant Erickson.

52. Defendants Erickson and Mondragon engaged in a conversation about needing to avoid liability, in which Defendant Erickson affirmed Defendant Mondragon's comment about needing to "CYA" (meaning "cover your ass") and stated that it was "too close" and could be a problem for them if she did hurt herself even after the officers had been out there and could have intervened.

53. Defendant Erickson continued to use the word "suicidal" or the term "feeling suicidal," even though those are distinct from suicidal thoughts or ideation and, upon information and belief, Defendant Erickson received training regarding this distinction.

Complaint for Damages – Jury Demand

54.    Defendant Erickson indicated that if she is feeling suicidal, that's "enough" for a 5150 mental health hold, even though, upon information and belief, his training taught him that this was not in fact enough.

55.    Defendant Erickson ordered a 5150 mental health hold of Plaintiff even though she was clearly at a low risk level, which, upon information and belief, Defendant Erickson's training taught results from strong protective factors and modifiable risk factors, would not qualify her for a 5150 mental health hold, and would instead counsel for outpatient referral, a safety plan, and providing her with emergency/crisis numbers.

56.    After the officers made the decision to place Plaintiff on a 5150 mental health hold, Defendant Mondragon again separately spoke with Plaintiff's partner, again acknowledging the history of Plaintiff's disorder counseling against imposing an involuntary mental health hold but nonetheless mentioning the need to protect himself and his partner from liability:

> My partner and I, we had to make that call. I understand . . . she's got a history and it might be like, I don't want to say, "normal," but you kinda know that she kinda goes through these, I don't want to say "phases," but you know, where she's kinda already down. In terms of like the liability, like for us, [inaudible] we spoke with her, we have to cover our bases, say like, ok, I don't know if she's gonna be a threat to herself later, and then if something just isn't you know quote unquote like "normal," and something changes, say, then that would just fall back on us.

57.    As a result of Plaintiff being placed on a 5150 mental health hold, she was restrained, transported to a psychiatric unit, held at the unit for three days, and experienced significant emotional distress associated with being held against her will in such a unit.

//

//

//

11
Complaint for Damages – Jury Demand

**D. Defendant Erickson's report omitted key information and falsified other information**

58.    Defendant Erickson's report focused almost entirely on risk factors, i.e., those weighing in favor of placing an individual on a 5150 mental health hold, and omitted virtually any information about protective factors, i.e., those weighing against such a hold, despite, upon information and belief, that his training included the need to address and balance both sets of factors.

59.    Defendant Erickson did not include in his report Plaintiff's statements about her current state of mind, other than that she did not currently want to hurt herself. For example, the report omitted her repeated comments that she was "okay."

60.    Defendant Erickson did not include in his report the fact that Plaintiff planned to speak with her clinician that day, despite the fact that, upon information and belief, as part of his training, he was taught to assess whether the individual has access to treatment and is actively engaged in treatment.

61.    Defendant Erickson did not include in his report the fact Plaintiff had a long history of suicidal thoughts but had never acted on those thoughts, despite the fact that, upon information and belief, as part of his training, he was taught to assess the individual's mental health history.

62.    Defendant Erickson did not include in his report the fact that the cuts on Plaintiff's wrist were superficial, despite the fact that, upon information and belief, as part of his training, he was taught to assess whether the individual has access to lethal means.

63.    Defendant Erickson did not include in his report the fact that Plaintiff lived with her partner and that her partner was present to monitor and support her, despite the fact that,

upon information and belief, as part of his training, he was taught to assess whether the individual has social supports.

64.     Defendant Erickson did not include in his report any discussion of the availability or appropriateness of mobile civilian response teams or other community-based interventions, despite, upon information and belief, the fact that Defendant Erickson received training that indicated the availability of such programs and encouraged trainees to utilize such programs.

65.     In Defendant Erickson's report, he wrote:

> Based on [Plaintiff] telling me she hurt herself two days ago, she told [her college instructor] that she hurt herself two days ago, she showed me self-inflicted wounds on her left wrist that were a couple days old and she told [her instructor] that she had suicidal thoughts on a daily basis; I determined that [Plaintiff] was a danger to herself and I placed her on a 72 hour Mental Health Detention Hold.

66.     Defendant Erickson's claim in his report that he based the decision to place Plaintiff on a 5150 mental health hold in part because she showed him her wounds was false. In fact, Defendant Erickson asked about the wounds, and Plaintiff displayed the wounds to Defendant Erickson, only once she was already in the ambulance after Defendant Erickson had already decided to place Plaintiff on a 5150 hold and advised her of this decision. Defendant Erickson did not previously ask to see or inquire about the type, location, severity, or any other details regarding the injuries.

67.     Defendant Erickson's application for the 5150 hold contained only the barest information, noting Plaintiff's suicidal thoughts and that she had hurt herself, but omitted any information about protective factors.

68.     Upon information and belief, Defendant Polovina, a sergeant and Defendant Erickson's supervisor, approved the mental health hold based on meager information provided in the police report, which Defendant Polovina approved.

Complaint for Damages – Jury Demand

## VI.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS – (42 U.S.C. § 1983)

### (Against Defendants Erickson and Mondragon)

69.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

70.    Under the California Welfare and Institutions Code § 5150(a):

When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

71.    By the actions and omissions described above, Defendants Erickson and Mondragon violated 42 U.S.C. § 1983, depriving Plaintiff of the clearly-established and well-settled rights:

a.    to be free from unreasonable seizures, i.e., detention without probable cause, as secured by the Fourth Amendment through the Fourteenth Amendment;

b.    to be free from deprivation of liberty without due process of law, as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution;

c.    to be free from involuntary commitment for mental health evaluation absent the justification required under state statute, WIC § 5150, *et seq.*, which state law creates a substantive due process right under the Fifth and Fourteenth Amendments to the U.S. Constitution; and

d.      to equal protection of the laws, as secured by the Fourteenth Amendment to the U.S. Constitution.

72.     Defendant Erickson lacked probable cause to detain Plaintiff for a 5150 hold.

73.     Defendant Erickson deprived Plaintiff of her liberty without due process by placing her on an involuntary mental health hold without properly considering the relevant factors to assess whether she qualified for a 5150 hold.

74.     Under WIC § 5150.2, Defendant Erickson was required to complete documentation that "shall include *detailed* information regarding the factual circumstances and observations constituting probable cause for the peace officer to believe that the individual required psychiatric evaluation" (emphasis added).

75.     Defendant Erickson failed to include detailed information regarding the factual circumstances and observations constituting probable cause.

76.     Under WIC § 5150.05(a), Defendant Erickson was required to "consider available relevant information about the historical course of the person's mental disorder if [he] determine[d] that the information has a reasonable bearing on the determination as to whether the person is a danger to . . . themselves."

77.     Defendant Erickson failed to consider all relevant information about the historical course of Plaintiff's mental disorder despite determining that the information had a reasonable bearing on the determination regarding whether she was a danger to herself.

78.     Defendant Erickson violated Plaintiff's due process rights by denying her the protections of WIC § 5150, *et seq.*

79.     Defendant Erickson violated Plaintiff's substantive due process rights by facilitating her psychiatric commitment when she did not meet the criteria for such commitment.

80. Defendant Erickson discriminated against Plaintiff because of her mental health disability by assigning dangerousness to her on the basis of her mental health disability rather than basing such an assessment on her conduct or statements.

81. Defendant Erickson discriminated against Plaintiff because of her mental health disability by targeting her based on her disability so as to avoid liability and utilizing a tool, the 5150 protocol, against her because of her disability.

82. Defendant Mondragon understood that Defendant Erickson lacked probable cause and was about to violate Plaintiff's constitutional rights against unlawful detention, to equal protection, and to due process.

83. Defendant Mondragon had a realistic opportunity to do something to prevent harm from occurring to Plaintiff.

84. Defendant Mondragon failed to take reasonable steps to prevent harm from occurring to Plaintiff.

85. Defendant Mondragon explicitly stated that his concern was that Plaintiff may pose a threat to herself some time in the future, which is inconsistent with WIC § 5150(a), which requires probable cause of *present* danger of self-harm.

86. Defendants Erickson and Mondragon subjected Plaintiff to wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by his acts and/or omissions.

87. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages.

88. The acts and omissions of Defendants Erickson and Mondragon entitle Plaintiff to punitive damages and penalties allowable under 42 USC §1983.

89. Plaintiff also claims reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

## SECOND CLAIM FOR RELIEF

### Civil Conspiracy

### (42 U.S.C. § 1983; 4th and 14th Amendments)

### (Against Defendants Erickson and Mondragon)

90. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

91. Defendants Erickson and Mondragon agreed to have Defendant Erickson detain Plaintiff despite recognizing that Defendant Erickson lacked probable cause for the 5150 mental health hold, had not adhered to due process, could not justify the detention under state law, was targeting Plaintiff because of her mental health disability, and was basing the decision on outdated assumptions and/or stereotypes regarding the supposed dangerousness of persons with mental health disabilities.

92. In the course of this unlawful conduct, Defendants reached an agreement between themselves to deprive Plaintiff of her constitutional rights and to protect each other from liability for depriving Plaintiff of her rights.

93. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity that actually deprived Plaintiff of her constitutional rights.

17
Complaint for Damages – Jury Demand

94.    Defendants Erickson and Mondragon subjected Plaintiff to wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by his acts and/or omissions.

95.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages.

96.    The acts and omissions of Defendants Erickson and Mondragon entitle Plaintiff to punitive damages and penalties allowable under 42 USC §1983.

97.    Plaintiff also claims reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

## THIRD CLAIM FOR RELIEF

### Supervisory Liability

### (42 U.S.C. § 1983)

### (Against Defendants Polovina and DOES)

98.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

99.    Defendants Polovina and DOES acted in a supervisory capacity under color of law. They were responsible for directing, supervising, training, reviewing, and approving the conduct of Officers Erickson and Mondragon, including Defendant Erickson's decision to place Plaintiff on a 5150 hold.

100.    The acts and failures of Defendants Polovina and DOES were a cause of Plaintiff's injury and of the violation of her rights by Defendant Erickson.

101. The conduct of Defendants Polovina and DOES entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983.

102. Plaintiff also claims reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

## FOURTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY

### (*Monell*: 42 U.S.C. § 1983)

### (Against Defendant City)

103. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

104. The unconstitutional actions and/or omissions of Defendants Erickson and Mondragon were pursuant to the following customs, policies, practices, and/or procedures of Defendant CITY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for the SFPD:

    a. To allow and authorize officers to place an individual on an involuntary mental health hold without probable cause that the individual poses a risk of harm to herself, in violation of the Fourth Amendment.

    b. To allow and authorize officers to justify an involuntary mental health hold based on past, versus present, suicidal ideation and report of any self-harm, no matter how minimal or vague, in violation of state statute requiring consideration of relevant information and various factors to assess the individual's level of dangerousness and need for a psychiatric evaluation, thus depriving individuals of liberty without due process.

    c.   To allow and authorize officers to place individuals on a 5150 hold who do not qualify for such a hold, in violation of substantive due process.

    d.   To allow and authorize officers to detain individuals with mental health disabilities based primarily on such individuals' status as being disabled, thus unlawfully discriminating against such individuals under the Fourteenth Amendment.

105.    The aforementioned customs, policies, practices, and procedures, as well as the failures to properly and adequately train, instruct, monitor, supervise and discipline Defendants Erickson and Mondragon were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth above.

106.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of DEFENDANTS, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees.

### FIFTH CLAIM FOR RELIEF

**Americans with Disabilities Act and Rehabilitation Act**

**(Against Defendant City)**

107.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

108.    Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity."

109.    Under Title II of the Americans with Disability Act, public entities are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to individuals with mental disabilities.

110.    The City is bound by the ADA's "integration mandate," which provides that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified persons with disabilities." 28 C.F.R. § 35.130(d); *see also* 28 C.F.R. § 41.51(d). In *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999), the Supreme Court held that public entities are required to provide community-based services to persons with disabilities when (a) such services are appropriate; (b) the affected persons do not oppose community-based treatment; and (c) community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of other persons with disabilities.

111.    Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

112.    The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

113.    Defendant City is a program that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

114.    Discrimination includes a defendant's failure to make reasonable

accommodations to the needs of a disabled person based on his or her serious mental health condition. These accommodations include training officers on available community-based resources and responses and on conducting a proper assessment of risk factors and protective factors for individuals experiencing mental health issues.

115.    Plaintiff was a disabled individual suffering from a mental impairment, serious depression, which is a mental health disability that substantially limited one or more major life activities. Plaintiff was a "qualified individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

116.    Defendant City is a "public entity" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

117.    A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or *is regarded as having impairment*.

118.    Defendant City denied Plaintiff benefits of the services, programs, or activities of the City because of her mental health disability and subjected her to discrimination.

119.    There was an outright denial of reasonable accommodations and unlawful resort to unnecessary institutionalization, i.e., denial of the most integrated setting appropriate to Plaintiff's needs, when officers recognized that Plaintiff had a mental health disability and required reasonable accommodations and/or community-based resources but instead resorted to involuntary institutionalization. This demonstrates that Defendants were discriminating against Plaintiff because of her disability, making unwarranted assumptions about the heightened risk posed by individuals with mental health disabilities, and denying her community-based interventions, supports, services, and accommodations.

Complaint for Damages – Jury Demand

120. Defendant violated Plaintiff's rights under the ADA with deliberate indifference.

121. The violation of Plaintiff's rights resulted from a municipal policy or custom adopted or maintained with deliberate indifference, in that the policy did not make clear to officers, through guidance, training, and supervision, that their discretion was limited by the ADA, including the "integration mandate," and other laws protecting individuals with disabilities and providing inadequate guidance on proper assessment of risk and protective factors and on community-based resources and interventions.

122. As a direct and proximate result of the Defendant's conduct as herein described, Plaintiff suffered damages in the amount to be determined at the time of trial.

**SIXTH CLAIM FOR RELIEF**

**UNRUH CIVIL RIGHTS ACT**

**(Cal. Civ. Code § 51)**

**(Against Defendant City)**

123. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

124. Pursuant to the Unruh Civil Rights Act, all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

125. Defendants violated the Unruh Act by denying Plaintiff the full and equal accommodations, advantages, facilities, privileges or services as other citizens who do not have

23

Complaint for Damages – Jury Demand

the same disability.

126. Plaintiff was denied community-based services on the basis of her disability and was instead institutionalized because of unfair assumptions about the risks posed by individuals with mental health disabilities and by abusing the 5150 protocol to avoid liability.

127. Plaintiff required accommodations and services for her psychiatric disability, which officers recognized. Officers denied her such accommodations and services.

128. As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

129. In conducting themselves as alleged herein, the officers acted within the course and scope of their employment with the City. Thus, the City is responsible for their conduct.

130. In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**FALSE ARREST AND FALSE IMPRISONMENT**

**(Cal. Govt. Code § 820 and California Common Law)**

**(Against Defendants City, Erickson, and Mondragon)**

131. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

132. Defendants Erickson and Mondragon, while working as police officers for CITY,

24

Complaint for Damages – Jury Demand

and acting within the course and scope of their duties, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, and unreasonable duress when they detained her for a 5150 hold without probable cause.

133.    Plaintiff did not knowingly or voluntarily consent to her detention or arrest. Plaintiff did not feel that she was free to leave.

134.    By detaining Plaintiff, Defendants Erickson and Mondragon deprived Plaintiff of her liberty without justification.

135.    CITY is vicariously liable for the wrongful acts of Defendants Erickson and Mondragon pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

136.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

137.    In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

//

//

//

**EIGHTH CLAIM FOR RELIEF**

**BANE ACT**

**(Cal. Civ. Code § 52.1)**

**(Against Defendants City, Erickson, and Mondragon)**

138.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

139.     The conduct of Defendants as described herein violated California Civil Code § 52.1, in that, through excessive force, coercion, intimidation, and threats, they interfered with Plaintiff's exercise and enjoyment of her civil rights, as enumerated herein and with her right to be secure in one's bodily integrity, as provided in California Civil Code section 43.

140.     Officers violated these rights when they detained Plaintiff, thus engaging in coercion, intimidation, and threats of force.

141.     As a direct and proximate result of Defendants' violation of Civil Code § 52.1, Plaintiff suffered violations of her State and Federal constitutional rights.

142.     Because the conduct of individual Defendants occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiff pursuant to respondeat superior.

143.     Defendants' acts were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff.

144.     As a direct and legal result of the acts and omissions of Defendants, Plaintiff has suffered great bodily injury, fear, anxiety, torment, and emotional distress. She is entitled to compensatory damages for her injuries and, as to the individual Defendants, to all damages

26

Complaint for Damages – Jury Demand

authorized by California Civil Code § 52.1, including punitive damages and attorney's fees as permitted by law.

### NINTH CLAIM FOR RELIEF

**Negligent Supervision, Training and Staffing**

**(Against Defendants City, Polovina, and DOES)**

145.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

146.    The negligent conduct of individual Defendants was committed within the course and scope of their employment.

147.    Defendants City, Polovina, and DOES had a duty to properly train and supervise Defendants Erickson and Mondragon. Defendant City's deficient policies, training, and supervision, and Defendants Polovina and DOES' deficient training and supervision, constituted their negligent failure in such duty.

148.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

149.    In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

//

## TENTH CLAIM FOR RELIEF

### Negligence

### (Against Defendants City, Erickson, and Mondragon)

150. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

151. By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff.

152. Defendant Erickson had a duty to conduct a proper assessment to determine Plaintiff's eligibility for a 5150 hold and to complete the application for a 5150 hold in an accurate and objective manner, and he negligently failed to do so.

153. Defendant Mondragon had a duty to intervene to prevent Defendant Erickson from violating Plaintiff's rights, and he negligently failed to do so.

154. Defendant City is liable for the negligent actions of Defendants Erickson and Mondragon under respondeat superior and under Cal. Gov't Code § 815.2

155. As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

156. In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

28

Complaint for Damages – Jury Demand

## ELEVENTH CLAIM FOR RELIEF

### Intentional infliction of emotional distress

### (Against Defendants City, Erickson, and Mondragon)

157.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

158.    Defendants Erickson and Mondragon knew and reasonably should have known that Plaintiff was susceptible to suffering severe emotional distress from their actions.

159.    Plaintiff did in fact suffer extreme emotional distress as a result of Defendant Erickson and Mondragon's actions.

160.    Defendant City is liable for the acts of its officers under Cal. Gov't Code § 815.2.

161.    The conduct of Defendants Erickson and Mondragon, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society. In order to deliberately injure, intimidate and harass Plaintiff, Defendants committed the aforementioned extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Plaintiff and convey fear and intimidation to Plaintiff.

162.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

163.    In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against

each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1. For compensatory, general, and special damages, in an amount according to proof;

2. For general damages, including damages for pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering;

3. For prejudgment interest;

4. For exemplary and punitive damages against each individual and Doe defendant, in amounts according to proof and appropriate to punish defendants and deter others from engaging in similar misconduct;

5. For costs of suit, including reasonable attorneys' fees, under 42 U.S.C. § 1988; and

6. For such other relief as may be warranted or as is just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action.

Dated this 1st day of April, 2025

**LAW OFFICE OF AARON ZISSER**

/s/ Aaron Zisser

Aaron B. Zisser
Attorney for Plaintiff,
JANE DOE

30
Complaint for Damages – Jury Demand